UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| *SEA HUNTERS, L.P.,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | )      *No. 2:08-cv-272-GZS* |
| | ) |
| *THE S.S. PORT NICHOLSON,* | ) |
| *Her Tackle, Apparel, Cargo,* | ) |
| *Appurtenances, and Property, in Rem,* | ) |
| | ) |
| *Defendant* | ) |

*ORDER ON MOTION TO INTERVENE*[1]

Mission Recovery, LLC ("Mission Recovery") moves to intervene in this maritime

salvage action pursuant to Federal Rules of Civil Procedure 24 and 60(b).  *See* Mission Recovery

LLC's Motion to Intervene ("Motion") (ECF No. 145) at 1-2.  Plaintiff Sea Hunters, L.P. ("Sea

Hunters") opposes the motion, *see* Sea Hunters, LP's Objection to Mission Recovery, LLC['s]

Motion to Intervene ("Opposition") (ECF No. 151), and claimant Secretary of State for

Transport of the United Kingdom ("UK DfT") takes no position on it, *see* Claimant DfT's

Response to Mission Recovery's Motion To Intervene (ECF No. 148).  For the reasons that

follow, I conclude that Mission Recovery is entitled pursuant to Rule 24 to intervene as of right

or, in the alternative, permissibly and that it has standing pursuant to Rule 60 to challenge the

---

[1] "There is a split of authority as to whether a motion to intervene is a non-dispositive matter within the meaning of Federal Rule of Civil Procedure 72(a)." *Los Cangris v. UMG Recordings, Inc*., Civil No. 10-1349 (JAG), 2012 WL 1952824, at *6 n.5 (D.P.R. May 30, 2012); *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig*., MDL No. 03-md-1532, 2009 WL 861485, at *1 n.2 (D. Me. Mar. 26, 2009).  In *Los Cangris*, United States Magistrate Judge Marcos E. López treated a motion to intervene as non-dispositive, reasoning, in the absence of First Circuit authority on the matter, that his ruling would not dispose of a "party's" claim or defense within the meaning of Federal Rule of Civil Procedure 72(a) and that 28 U.S.C. § 636(b)(1)(A) permits a United States District Judge to designate a United States Magistrate Judge to determine pending pretrial matters with exceptions that do not include motions to intervene.  *Los Cangris*, 2012 WL 1952824, at *6 n.5.  In *New Motor*, my colleague, United States Magistrate Judge Margaret J. Kravchuk, also treated a motion to intervene as non-dispositive.  *See New Motor*, 2009 WL 861485, at *1.  I do the same here.

1

court's order appointing Sea Hunters the exclusive salvor in possession of the S.S. Port Nicholson ("Port Nicholson").  Accordingly, I grant the Motion.

## I.  Applicable Legal Standards

### A.  Intervention as of Right

"On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).

As the First Circuit has construed this rule:

> It follows that a would-be intervenor must demonstrate that: (i) its motion is timely; (ii) it has an interest relating to the property or transaction that forms the foundation of the ongoing action; (iii) the disposition of the action threatens to impair or impede its ability to protect this interest; and (iv) no existing party adequately represents its interest.  Each of these requirements must be fulfilled; failure to satisfy any one of them defeats intervention as of right.

> Determining whether the necessary showings have been made requires a series of judgment calls – a balancing of factors that arise in highly idiosyncratic factual settings.  Moreover, the inherent imprecision of Rule 24(a)(2)'s individual elements dictates that the rule should be applied with an eye toward the commonsense view of the overall litigation.

*Ungar v. Arafat*, 634 F.3d 46, 50-51 (1st Cir. 2011) (citations and internal quotation marks omitted).

### B.  Permissive Intervention

"On timely motion, the court may permit anyone to intervene who[,]" *inter alia*, "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P.  24(b)(1)(B).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

"[P]ermissive intervention ordinarily must be supported by independent jurisdictional grounds." *International Paper Co. v. Town of Jay,* 887 F.2d 338, 346 (1st Cir. 1989) (citations and internal quotation marks omitted).  The First Circuit has noted that the threshold for permissive intervention is low, and that once the threshold requirements are satisfied, the district court may "consider almost any factor rationally relevant[.]"  *Dagget v. Commission on Governmental Ethics & Election Practices,* 172 F.3d 104, 113 (1st Cir. 1999); *Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Comm'n,* 197 F.3d 560, 568 (1st Cir. 1999).  Thus, the decision to grant or deny a motion for permissive intervention is within the sound discretion of the district court.  *See Dagget,* 172 F.3d at 113 ("the district court . . . enjoys very broad discretion in granting or denying the motion" for permissive intervention).

### C.  Rule 60(b)

Federal Rule of Civil Procedure 60 provides, in relevant part:

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

  **(1)** mistake, inadvertence, surprise, or excusable neglect;

  **(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

  **(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

  **(4)** the judgment is void;

  **(5)** the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

  **(6)** any other reason that justifies relief.

**(c) Timing and Effect of the Motion.**

**(1)** *Timing.* A motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

**(2)** *Effect on Finality.* The motion does not affect the judgment's finality or suspend its operation.

Fed. R. Civ. P. 60.

## II.  Discussion

### A.  Intervention as of Right

Mission Recovery demonstrates each of the elements of intervention as of right, as follows.

1.  **Timeliness**.  Whether a motion to intervene is timely depends on the progress of the case, as well as "1) the length of time the intervenor knew [its] interest was imperiled; 2) the foreseeable prejudice to the existing parties if intervention is granted, or to the intervenor if it is denied; and 3) any idiosyncratic circumstances which weigh for or against intervention." *Geiger v. Foley Hoag LLP Retirement Plan*, 521 F.3d 60, 65 (1st Cir. 2008) (citation and internal quotation marks omitted).  "The more advanced the litigation, the more . . . scrutiny the motion [to intervene as of right] must withstand."  *Id.* at 64 (citation and internal quotation marks omitted).

Mission Recovery argues, and Sea Hunters does not contest, that despite the pendency of this case since 2008, the Motion is timely.  No salvage award has been made, and the validity of the UK DfT's claim to ownership of the vessel and her cargo has not been adjudicated.  A scheduling order first issued on January 4, 2013.  *See* ECF No. 98.  However, the court stayed the deadlines set therein pending its final resolution on May 23, 2013, of a dispute between Sea Hunters and the UK DfT over the appropriateness of the issuance of the scheduling order.  *See* ECF Nos. 126, 136, 143.  On June 20, 2013, the day before Mission Recovery filed the Motion,

Sea Hunters and the UK DfT jointly moved for further suspension of the scheduling order deadlines to permit settlement negotiations. *See* ECF No. 144. They noted therein that they had privately agreed to suspend the deadlines that had been set through June 24, 2013. *See id.* On June 25, 2013, I granted their joint motion, although I did so to permit the adjudication of the Motion, not for the reasons set forth by Sea Hunters and the UK DfT. *See* ECF No. 146.

Mission Recovery acted with due diligence in seeking to intervene. The company was formed by Daniel E. Stochel, the manager of Equitron Capital Management, LP ("Equitron"), on March 12, 2013, for the express purpose of salvaging the Port Nicholson and recovering Stochel's personal investment and the investment of Equitron (together totaling $600,000) in Deep Sea Hunters, LP ("Deep Sea Hunters"), a Maine limited partnership managed by Greg Brooks, manager of Sub Sea Research, LLC ("Sub Sea Research"), and John Hardy Jr. Affidavit of Daniel E. Stochel ("Stochel Aff.") (ECF No. 145-2), attached to Motion, ¶¶ 2-3, 8 & Exh. 2 (ECF No. 145-4) thereto.[2] Stochel avers that, after making that investment in April 2011, he and Equitron investors grew disillusioned with the lack of progress of Sub Sea Research and its related entities in attempting to salvage the Port Nicholson, and after a series of telephone calls between himself and Brooks in 2012, he became concerned that Brooks might frustrate a proper accounting of items salvaged from the vessel. *See* Stochel Aff. ¶¶ 3-6.

Stochel avers that on May 5, 2013, Mission Recovery entered into an exclusive agreement with Swire Seabed AS, an experienced international salvage company based in Norway, to effect the salvage of the Port Nicholson. *See id.* ¶ 9 & Exhs. 3-4 (ECF Nos. 145-5 & 145-6) thereto. On May 21, 2013, Stochel traveled to Gorham, Maine, with transactional counsel to meet with Brooks and other principals of Sub Sea Research to propose a joint venture

---

[2] Although Stochel states in his affidavit that Mission Recovery was formed on March 12, 2012, Stochel Aff. ¶ 8, the documentation that he attaches indicates that it was formed on March 12, 2013, Exh. 2 thereto.

between Mission Recovery and Sub Sea Research/Sea Hunters. *See* Stochel Aff. ¶ 10 & Exh. 5 (ECF No. 145-7) thereto. On May 31, 2013, Brooks sent Stochel an email rejecting the proposal and providing no alternative proposal. *See* Stochel Aff. ¶ 12. Mission Recovery timely filed this motion less than one month later, on June 21, 2013. *See* ECF Docket.

      2.      **Interest in the Litigation**. "While the type of interest sufficient to sustain intervention as of right is not amenable to precise and authoritative definition, a putative intervenor must show at a bare minimum that it has a significantly protectable interest that is direct, not contingent." *Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998) (citations and internal quotation marks omitted).

      Sea Hunters disputes that Mission Recovery has any standing to intervene in this matter, given that (i) there is no allegation, much less documentation, that Stochel or Equitron controls Deep Sea Hunters or that Mission Recovery has any business relationship with Deep Sea Hunters, (ii) neither Stochel, Equitron, nor Mission Recovery has any salvage contract with the plaintiff, Sea Hunters, (iii) Mission Recovery fails to demonstrate any legal relationship or agency between Stochel and Equitron and Deep Sea Hunters or any legal relationship between Deep Sea Hunters and the plaintiff, Sea Hunters. *See* Opposition ¶¶ 2-3, 8. Sea Hunters adds that Deep Sea Hunters was formed only to purchase and operate a submarine that would "be used to survey shipwrecks located by Sub Sea Research, LLC and Sea Hunters LP" and that the offering summary for units in Deep Sea Hunters did not allow Stochel or Equitron to act on behalf of Deep Sea Hunters. *See id*. ¶ 10; Exh. 1 (ECF No. 145-3) to Stochel Aff.

      Nonetheless, as Mission Recovery suggests, *see* Mission Recovery LLC's Reply to Sea Hunters' Opposition to Mission Recovery's Motion To Intervene ("Reply") (ECF No. 153) at 3, even assuming that all of the foregoing is true, it is irrelevant. Stochel, who formed Mission

Recovery, is among a group of investors in Deep Sea Hunters, an affiliate of Sea Hunters. *See* Stochel Aff. ¶¶ 3-4; *see also* Reply at 3-4 & Exhs. 1-2 (ECF Nos. 153-1 & 153-2) thereto.[3] After he and other investors became disillusioned with what they perceived as the lack of progress in Sea Hunters' and related entities' salvage of the Port Nicholson, Stochel organized Mission Recovery for the express purpose of salvaging the vessel. *See* Stochel Aff. ¶¶ 5-8 & Exh. 2 thereto. Mission Recovery has taken significant steps toward doing so, including entering into an exclusive agreement with Swire Seabed AS, an international salvage company based in Norway, to effect the salvage and receiving commitments as of June 20, 2013, of at least $7 million from investors to fund it. *See* Stochel Aff. ¶¶ 9, 14 & Exhs. 3-4 thereto.

However, Mission Recovery cannot salvage the Port Nicholson unless it succeeds in challenging this court's appointment of Sea Hunters as substitute custodian of the vessel. *See* ECF No. 8; *see also* [Proposed] Intervening Complaint (Verified) (ECF No. 145-1), attached to Motion, at 12 (requesting, *inter alia*, that court appoint Mission Recovery as substitute custodian of (i) the items recovered from the Port Nicholson by Sea Hunters, (ii) the Port Nicholson, and (iii) the additional material that Mission Recovery expects to recover). Mission Recovery, therefore, has a direct, significantly protectable interest in this suit.[4]

---

[3] In its reply brief, Mission Recovery represents, and attaches documents indicating, that Brooks was among the incorporators and general partners/managers of Sea Hunters, LP, Sea Hunters 2 LP, Deep Sea Hunters LP, and Sub Sea Recovery, LLC d/b/a Sub Sea Research, LLC, and that the Deep Sea Hunters offering summary indicated that Deep Sea Hunters had a three percent share in recoveries from the Port Nicholson, while Sea Hunters had a 25 percent share and Sub Sea Research a 72 percent share. *See* Reply at 4 & Exhs. 1-2 thereto.

[4] Moreover, whatever the ultimate merits of Mission Recovery's bid to oust Sea Hunters as substitute custodian – a matter that is not now before the court – its bid is not frivolous. "To maintain its franchise to the exclusion of others, the salvor's efforts must be (1) undertaken with due diligence, (2) ongoing, and (3) clothed with some prospect of success." *Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked & Abandoned Steam Vessel*, 833 F.2d 1059, 1061 (1st Cir. 1987). Stochel avers that (i) he and other investors have grown disillusioned with the lack of progress of Sub Sea Research and its related entities in the attempted salvage of the Port Nicholson, (ii) in telephone calls in 2012, Brooks told Stochel that the reason he desired to control the recovery site with his ship and crew was to avoid letting this court give away all of the gold bars that might be recovered, and he would if necessary place certain bars in the back of his truck and store them in his garage, (iii) on May 3, 2013, Stochel received an email and attached letter from Brooks titled "The Sinking of the PORT NICHOLSON," stating, among
(*continued on next page*)

3.       **Impairment of Ability To Protect Interest**.  The third factor is intertwined with the second.  *See, e.g., Canadian Nat'l Ry. Co. v. Montreal, Me. & Atlantic Ry., Inc.*, No. CV 10-452-B-W, 2010 WL 5168003, at *5 (D. Me. Dec. 14, 2010) (considering second and third factors together "since the magnitude or extent of an intervenor's interest will be in part a function of how much the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest.") (citations and internal quotation marks omitted).  Mission Recovery was created for the purpose of salvaging the Port Nicholson.  If it is not permitted to intervene, its interest will be significantly impaired.

4.       **Adequacy of Representation by Existing Parties**.  "[A]n applicant for intervention need only make a minimal showing that the representation afforded by existing parties likely will prove inadequate."  *Patch*, 136 F.3d at 207.  "Nonetheless, the adequacy of interest requirement is more than a piper tiger."  *Id*.  "A party that seeks to intervene as of right most produce some tangible basis to support a claim of purported inadequacy."  *Id*.  Mission Recovery posits, and Sea Hunters does not dispute, that Sea Hunters cannot adequately represent its interests.  *See* Motion at 3; *see generally* Opposition.  The interests of Mission Recovery and Sea Hunters clearly clash: Mission Recovery seeks to oust Sea Hunters as salvor in possession.  Nor can the UK DfT be expected to adequately represent Mission Recovery's interests.  While the UK DfT does not oppose the grant of this Motion and supports *inquiry into* Mission Recovery's serious allegations, *see* ECF Nos. 148, 150, he notes that nothing in his position "indicates support for the allegations contained in Mission Recovery's motion or agreement with

_____

other things, that Sub Sea Research was out of funds and was intending to shut down operations, and (iv) Stochel learned that the discovery of two items salvaged from the Port Nicholson, believed to be a brick and a box retrieved in 2012, was not reported to the court.  *See* Stochel Aff. ¶¶ 5-6, 16-17 & Exhs. 7-8 (ECF Nos. 145-9 & 145-10) thereto.  Sea Hunters acknowledges that it failed to report the discovery of a "a broken brick and an encrusted object" to the court, although it states that its failure to do so was inadvertent.  *See* Opposition ¶ 21 & Affidavit of Gregory Brooks, Exh. C (ECF No. 151-3) thereto, ¶ 4.

the allegations made in Mission Recovery's proposed complaint, nor any position on the merits of Mission Recovery's desire to replace Sea Hunters as substitute salvor, as UK DfT has no knowledge whether the assertions therein are accurate or not[,]" ECF No. 148.[5]

## B.  Permissive Intervention

In the alternative, I find that Mission Recovery meets the standards for permissive intervention.

First, the court has subject matter jurisdiction over Mission Recovery's salvage rights claim.  *See Martha's Vineyard*, 833 F.2d at 1064 (case principally involving claim of rights to salvage shipwreck was, "[w]ithout any question, . . . one which invoked the district court's admiralty or maritime jurisdiction") (citation and internal quotation marks omitted).

Second, Mission Recovery's claim shares with the main action common questions of both law and fact – namely, whether Sea Hunters' efforts have been "(1) undertaken with due diligence, (2) ongoing, and (3) clothed with some prospect of success[,]" *id.* at 1062, justifying, as a matter of law, the continued maintenance of its exclusive franchise to salvage the Port Nicholson.

Third, for the reasons discussed above, Mission Recovery's motion is timely.  The grant of the Motion will not unduly delay or prejudice the adjudication of the original parties' rights. As of the time of the filing of the Motion, Sea Hunters and the UK DfT were operating under a private agreement to suspend the court's scheduling order deadlines (which pertain solely to the matter of the UK DfT's ownership claim) pending settlement negotiations.  *See* ECF No. 144.

---

[5] Sea Hunters alleges that the UK DfT's support for inquiry into Mission Recovery's allegations demonstrates that the UK DfT "is working in concert with Mission Recovery . . . to avoid UK DfT document production that was first requested over six months ago[,]" Opposition ¶ 18, jeopardizing Sea Hunters' salvage operation, *see id.* ¶¶ 17-20. Even assuming the truth of this assertion, Sea Hunters does not argue that, as a result, the UK DfT adequately represents Mission Recovery's interests.  Nor is it otherwise apparent that it does.

Prior thereto, the deadlines had been officially suspended pending the resolution of the parties' dispute over the appropriateness of setting the deadlines at all.  *See* ECF No. 143.[6]

Fourth and finally, when "the applicant's input is likely to make a significant and useful contribution to the development of the underlying factual and legal issues, permissive intervention is favored." *Penobscot Nation v. Mills*, No. 1:12-cv-254-GZS, 2013 WL 3098042, at *5 (D. Me. June 18, 2013) (citation and internal quotation marks omitted).  That is the case here.

### C.  Rule 60(b) Standing

Mission Recovery seeks relief from the court's order dated August 25, 2008, appointing Sea Hunters as substitute custodian.  *See* Motion at 3-4; ECF No. 8.  Mission Recovery does not identify the provision under Rule 60(b) pursuant to which it seeks relief.  *See generally* Motion; Reply.  However, it cites, *inter alia*, *R.M.S. Titanic Inc. v. Wrecked & Abandoned Vessel*, 924 F. Supp. 714 (E.D. Va. 1996).  *See* Motion at 4.  That decision describes a prior decision in which the *Titanic* court rejected the argument of a salvor in possession that a challenger had no standing to seek relief from the order appointing the salvor in possession.  *See Titanic*, 924 F. Supp. at 716.

In the underlying decision, the *Titanic* court noted that Rule 60(b)(5) provides that a party or a party's legal representative may file a motion seeking relief from a final judgment, order, or proceeding when "it is no longer equitable that the judgment should have prospective application." *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 920 F. Supp. 96, 98 (E.D.

---

[6] Sea Hunters now takes the position that the court must promptly adjudicate the question of the UK DfT's ownership claim.  *See* Opposition ¶¶ 19-20.  This, and other scheduling matters, will be discussed at a status conference with counsel that I am directing the Clerk's Office to convene.  *See infra.*

Va. 1996) (quoting Fed. R. Civ. P. 60(b)(5)).[7]  It observed that such motions must be made within a reasonable time.  *See id.*  It then reasoned that the challenger qualified as a "party" for purposes of Rule 60(b) because (i) actions *in rem*, or "against the thing," are "designed to adjudicate rights in specific property against *all of the world*, and judgments in such cases are binding to the same extent[,]" and "[i]t logically follows that if the whole world are parties bound by the judgment, then the converse should also be true: the whole world are parties who may request relief from the judgment."  *Id.* (citation and internal quotation marks omitted) (emphasis in original).

It held, in the alternative, that it had power to raise the issue *sua sponte*, persuasively reasoning:

> This case is an unusual one in that it deals with the salvage rights of a unique, historical vessel.  Furthermore, "treasure salvage" cases are in themselves unusual.  The limited case law on the subject suggests that salvors can lose their possessory rights.  If, as these cases imply, a party can lose its status as a salvor in possession, then it follows that there must be a procedural vehicle in which the issue can be raised subsequent to a court's grant of salvor-in-possession status.  If not, a court's grant of salvor-in-possession status would be binding on the whole world forever, and a vessel would never be actually salvaged in a situation where the salvor fails to use its rights once granted.  This possibility violates the underlying purpose of salvage law, the complete salvaging of a vessel.

*Id.* at 98-99 (citations omitted).

On any of three bases, Mission Recovery has standing to challenge the court's order appointing Sea Hunters salvor in possession: (i) it is a "party" because I have found it entitled to intervene as of right or, in the alternative, permissively, (ii) in any event, for the reasons articulated in *Titanic*, it qualifies as a "party" for purposes of Rule 60(b), and, (iii) in any event, for the reasons articulated in *Titanic*, this court has power to reexamine its order *sua sponte*.  In

---

[7] The quoted language since has been revised but not substantively changed.

addition, for the reasons discussed above, Mission Recovery's Rule 60(b) challenge is timely within the meaning of Rule 60(c).

### III.  Conclusion

For the foregoing reasons, the Motion is **GRANTED**.  Mission Recovery is **DIRECTED** to file its complaint forthwith on the ECF Docket.  The Clerk's Office is **DIRECTED** to schedule a status teleconference at the earliest convenience of the parties and the court during which I anticipate discussing (i) the manner in which Mission Recovery plans to proceed with its challenge to Sea Hunters' status as salvor in possession and deadlines incident thereto and (ii) the resetting of scheduling order deadlines that pertain to the question of the UK DfT's claim of ownership of the vessel and her cargo.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 29th day of September, 2013.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge