UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SEA HUNTERS, LP, )<br>    *Plaintiff,* )<br>v. )<br>THE UNIDENTIFIED, WRECKED, AND )<br>ABANDONED VESSEL, *in rem,* )<br>    *Defendant,* )<br>and )<br>MISSION RECOVERY, LLC )<br>    *Intervening Plaintiff.* ) | Civil Action No.:2:08-cv-00272-GZS<br>IN ADMIRALTY |

**MISSION RECOVERY LLC'S REPLY TO
RESPONSES OF SEA HUNTERS AND THE UK DfT
TO THE COURT'S ORDER TO SHOW CAUSE**

NOW COMES Mission Recovery, LLC (hereinafter "Mission Recovery"), by and through its undersigned attorneys, Holbrook & Murphy and Kenneth I. Denos, P.C. and hereby submits the following Reply to the Responses of Sea Hunters, LP ("Sea Hunters")[1] and the Secretary of State for Transport of the United Kingdom ("DfT")[2] to this Court's Order to Show Cause issued on February 24, 2015.[3]

**THE RESPONSE OF SEA HUNTERS**

In its Response to this Court's Order to Show Cause, Sea Hunters concedes that it should no longer remain as this Court's Substitute Custodian, but then attempts to foreclose any ability of Mission Recovery to pursue the salvage of the *Port Nicholson* by maintaining that this case should be dismissed without prejudice to Sea Hunters.

---

[1] [DE 328]
[2] [DE 330]
[3] [DE 325]

Just because Sea Hunters cannot continue as this Court's Substitute Custodian, it does not follow that the case itself should be dismissed, particularly as Mission Recovery, an innocent interested party to this action, remains committed to fulfilling the intended purpose of salvage law —"the complete salvaging of a vessel".[4]

Notably, the Magistrate Judge's Order permitting Mission Recovery's intervention in the instant case remarked upon its standing "to challenge the court's order appointing Sea Hunters the exclusive salvor in possession of the S.S. Port Nicholson."[5]  A dismissal of this case without otherwise allowing Mission Recovery to pursue a claim in Admiralty against the *Port Nicholson* would, through no fault of Mission Recovery, unfairly impair its interest in the subject of this action and eviscerate the purpose of the intervention Order.  Aside from a free-for-all on the high seas that could result from a refusal of this Court to maintain jurisdiction, this action represents the sole recourse of Daniel Stochel, the founder of Mission Recovery, to recoup some of his losses through a salvage of the shipwreck.

The record is replete with evidence and testimony concerning the labyrinthine network of entities and the many instances of self-dealing concerning Greg Brooks.  The record also manifests the colossal failure of Sea Hunters to discharge its duties as Substitute Custodian of the *Port Nicholson* and of the millions of dollars of innocent investor monies squandered, without even one credible salvage expedition among the many taken to the wreck site.  Principles of equity dictate that Daniel Stochel, one of the largest single victims of Brooks' investment scheme, not be unfairly prejudiced <u>yet again</u> by Brooks' actions by having this case dismissed through no fault of Mission Recovery.  In the words of the Magistrate Judge, "Mission Recovery cannot salvage the Port Nicholson unless it succeeds in challenging this court's appointment of Sea Hunters as substitute custodian of the vessel."[6]  Any such challenge, whereafter the *Port*

---

[4] [DE 161] p.11, citing <u>R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel</u>, 920 F.Supp. 96, 99 (E.D. Va. 1996).
[5] [DE 161] at pp. 1-2.
[6] *Id*. at p. 7.

2

*Nicholson* does not continue to remain as the Defendant under this Court's custody and control, would, of course, be pointless.

## THE RESPONSE OF THE DfT

The DfT has argued that this case should be dismissed in its entirety due to Sea Hunters' commission of fraud upon this Court and the absence of tangible proof that the *Port Nicholson* was carrying gold, platinum, or other precious items on her final voyage.  The DfT is seeking to attribute the taint of Sea Hunters' actions to the entire case in the hopes that this Court will simply wash its hands of the matter.  The DfT further asserts that Mission Recovery will suffer no harm from a dismissal of this case because a supplemental warrant of arrest has not been issued to Mission Recovery and Mission Recovery has not conducted salvage operations.  Mission Recovery's reasoning as to why this case should not be dismissed due to actions of Sea Hunters is discussed *supra*.  The remaining arguments of the DfT discussed below should be rejected by the Court for the reasons herein given.

**The Value of Cargo is Irrelevant in Granting Exclusive Salvage Rights**

In its Response to this Court's Order to Show Cause, the DfT has contended that Mission Recovery's Intervening Complaint[7] should be dismissed because the gold and silver bullion described by Sea Hunters in its Amended Complaint *In Rem* "no longer exists in light of the fact that all documents and information regarding existence of precious cargo was fabricated by Sea Hunters."[8]  This contention ignores the fact that neither Mission Recovery's Intervening Complaint, nor the Magistrate Judge's Order permitting Mission Recovery to so intervene, made any reference to the presence of such items, nor was the presence of precious metals ever considered by the Magistrate Judge as a condition to intervene.  Nevertheless, this Court's authority to initially grant, or subsequently transfer to Mission Recovery, an exclusive franchise

---

[7] [DE 145-1]
[8] [DE 330] pp 9-10.

to salvage the *Port Nicholson* rests on its assertion of constructive possession of the *res*, which it holds irrespective of whether "precious cargo", "valuable cargo" or cargo of any value whatsoever was aboard the *Port Nicholson* on its final voyage.

This is not the first time that the DfT has baldly asserted that, if valuable cargo is not shown to be aboard the *Port Nicholson*, no person should have the right to salvage the ship, or otherwise have the sanction from this Court to do so. Nowhere does the DfT provide any case law or statutory support for this premise. A rather contrary position appears to have been established in Martha's Vineyard,[9] where the original salvor was dispossessed of its right to exclusively salvage the *S.S. Republic*, a passenger ship which sank 60 miles off Nantucket island in 1909 and was rumored to be carrying gold coins bound for imperial Russia. In upholding the District Court's award of exclusive salvage rights to Marshallton, Inc., a competing salvor, the First Circuit noted that "[r]ather than retrieving the rumored cache of American gold eagles which, gossip had it, were aboard the *Republic* as part of a loan from France to the Czar, Marshallton found a motley assortment of waterlogged commercial cargo and bric-a-brac, e.g., a set of monogrammed coffeepots and half a bedpan."[10] Much has been made by the parties in this case of the Martha's Vineyard court's three-part test regarding whether an original salvor may maintain its exclusive franchise, and whether the new salvor is "ready, willing, and able" to conduct the salvage, but equally as important is the absence of any requirement by the First Circuit that the shipwreck in question hold valuable cargo in order to grant (or re-assign) exclusive salvage rights.

---

[9] Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked & Abandoned Steam Vessel, 833 F.2d 1059 (1st Cir. 1987).
[10] *Id*. at 1062, footnote #3.

**This Court Should Continue to Assert Jurisdiction Over the *Res* and the Interests of the Parties to this Action**

As discussed more fully in its Response to this Court's Order to Show Cause,[11] Mission Recovery contends that this Court, in a prior order, has already cogently demonstrated why it could exercise *quasi in rem* jurisdiction and *in rem* jurisdiction by constructive possession of the *Port Nicholson*.[12] The censurable actions of Sea Hunters do not change this analysis, since the *res* itself is still within the Court's custody and control. Moreover, notwithstanding the fact that the shipwreck is located in international waters, the application of this Court's constructive possession over the *res* under the principles of salvage law is borne out by other admiralty courts,[13] including the District Court of Massachusetts in a subsequent ruling regarding the *S.S. Republic*,[14] as well as the Magistrate Judge in this action.[15] To put a fine point on the matter, the DfT notes that Mission Recovery's interests would not be prejudiced by a dismissal of the case because, among other reasons, the Court has not issued a supplemental warrant of arrest of the

---

[11] [DE 327]

[12] [DE 130] The Magistrate Judge stated that, despite the DfT's restricted appearance in this case, the Court nevertheless has the power to compel the DfT to respond to discovery requests, and that it has jurisdiction concerning the DfT's interest in the *res*. The Magistrate Judge specifically noted that "the court properly exercises jurisdiction over the UK DfT consonant with his restricted appearance, combined with constructive *in rem* jurisdiction over property in international waters that is yet to be salvaged".

[13] *See* R.M.S. Titanic v. Wrecked & Abandoned Vessel, 9 F.Supp. 2d 624, 634, (E.D. Va. 1998) (Assertion of jurisdiction over shipwreck in international waters). ("Exercise of in rem jurisdiction for the purpose of salvaging the wreck of the R.M.S. TITANIC is consistent with international law.") *See also* Haver, at 961:

> The exercise of admiralty subject matter jurisdiction has never been limited to maritime causes arising solely in the United States territorial waters. On the contrary, maritime causes arising from matters on the high seas anywhere in the world have traditionally been brought by courts of admiralty, subject only to a discretionary doctrine of *forum non conveniens*.

[14] Martha's Vineyard Scuba Headquarters, Inc. v. Wrecked & Abandoned Steam Vessel R.M.S., 2005 U.S. Dist. LEXIS 40934, at 14 (Dist. MA. 2005):

> It would be impossible for anyone to bring the *Republic* [located 60 miles off the coast of Nantucket island] within the jurisdictional boundaries of any court. Moreover, no salvor is going to absorb all of the risks associated with salvaging the shipwreck's goods without the sort of protection sought by MVSHQ. Thus, constructive *in rem* jurisdiction is a legally sound solution to an otherwise irreconcilable dilemma.

[15] [DE 130] In this ruling, the Magistrate Judge cited Cobb Coin Co. v. The Unidentified, Wrecked & Abandoned Sailing Vessel, 525 F. Supp. 186, 197 (S.D. Fla. 1981) in support of its position:

> [O]nce a salvor who discovers and brings up an artifact from an identifiable wreck site initiates suit by taking that object into federal court, the court acquires jurisdiction not only to adjudicate the disposition of the article already within its territorial jurisdiction, but maritime jurisdiction (based on in personam principles) to adjudicate disputes between competing salvors, and in rem jurisdiction (coupled with in personam jurisdiction over the claimants) to dispose of all articles thereafter brought up from that site. The filing of such a suit is, as here, an open invitation (either at that time, or such time as an applicable interest may thereafter arise) for claimants and competing salvors to come before the court and make their alleged interests known.

*Port Nicholson*. But this statement is, in itself, a tacit admission that this Court therefore has the authority to issue such an arrest. In other words, the DfT seeks to have it both ways – by denying that this Court may assert jurisdiction when such position suits the DfT, and acknowledging jurisdiction where her interests would benefit therefrom.

The DfT has further requested that this Court re-open the discovery process regarding, among other matters, whether the items initially obtained by Sea Hunters to obtain the original warrant of arrest issued on August 25, 2008[16] were not actually recovered from the *Port Nicholson*. A claim that the original items proffered by Sea Hunters as coming from the vessel, even if true, should nonetheless not prevent this Court from maintaining jurisdiction over the shipwreck. In subsequent ventures to the wreck site in 2011, Sea Hunters produced a compass, a boiler brick, and a brass segment of a hand pump, as well as a DVD of the shipwreck.[17] Importantly, the DfT "accept[ed] Sea Hunters' assertion that the *In Rem* Defendant is the *SS Port Nicholson*."[18] If, at the time of the original warrant for the arrest of the *In Rem* Defendant on August 25, 2008, or at the time of the Amended Order Appointing Sea Hunters as Substitute Custodian issued on August 20, 2012,[19] this Court was in possession of items belonging to the vessel and of video evidence that is undisputed by the parties to this case as identifying the *Port Nicholson*, the Court should have sufficient grounds to exercise *quasi in rem* jurisdiction over the vessel, or *in rem* jurisdiction by constructive possession. Any subsequent claims that this Court lacks jurisdiction because items concerning the shipwreck have not been brought within the District is therefore moot.

---

[16] [DE 8]
[17] [DE 56]
[18] *Id*. at p. 2.
[19] [DE 78]

**A Dismissal of Mission Recovery's Intervening Complaint will Unfairly Prejudice its Interests**

The DfT is claiming that Mission Recovery would not be prejudiced by a dismissal of this case because, among other reasons, Mission Recovery has conducted no salvage operations. The DfT knows full well, however, that Mission Recovery has not conducted salvage operations at the wreck site of the *Port Nicholson* because it has complied with this Court's order granting Sea Hunters an exclusive franchise to do so.

As noted above, the DfT then asserts that a dismissal of the case will work no prejudice against Mission Recovery because a change of substitute custodian requires a re-arrest of the *Port Nicholson* by Mission Recovery, a supplemental warrant for which has not been issued by this Court. As more fully described in Mission Recovery's Response to the Court's Order to Show Cause, the arrest of, and exercise by a U.S. admiralty court of jurisdiction over, an *in rem* defendant shipwreck has long been recognized as a symbolic process, since the ship itself is typically never actually brought into the District, but rather pieces of the ship or its cargo are used to represent the whole of the shipwreck over which the court asserts its authority.[20] Once the ship is brought within the jurisdiction of the Court, a supplemental warrant of arrest may thereafter be issued, but the symbolic act of bringing additional pieces of the ship into the district is unnecessary, since the vessel remains within the Court's custody and control. The DfT argues that the procedural requirements for a supplemental warrant of arrest should quash Mission Recovery's interests in the *Res* in the present action, ignoring the fact that this Court may, in the process of re-assigning the duties of Substitute Custodian from Sea Hunters to Mission

---

[20] *See* Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel, 2009 U.S. Dist. LEXIS 119088 (M.D. Fla. 2009) (finding that the "fiction" created by Odyssey Marine by depositing an artifact of a shipwreck with the court was "emblematic of the Court's possession of the entire shipwreck" - asserting jurisdiction over a shipwreck and its debris field even though part of the wreck was outside U.S. territorial boundaries). *See also* R.M.S. Titanic v. Haver, 171 F.3d 943, 964 (4th Cir. 1998) ("The propriety of exercising *in rem* jurisdiction over an entire ship wreck within the court's territorial jurisdiction when only part of that wreck is actually presented to the court rests upon the fiction that the *res* is not divided and that therefore possession of some of it is constructively possession of all.").

Recovery, issue such a supplemental warrant. Moreover, as discussed *supra*, a dismissal of this case would unfairly disenfranchise Mission Recovery of its interest in the subject of this action and deprive it of the ability to salvage the *Port Nicholson* under the auspices of this Court.

## CONCLUSION

Just because Sea Hunters cannot or should not continue as this Court's Substitute Custodian of the *Port Nicholson* should not cause the Court to dismiss the case, particularly as there remains an innocent interested party in Mission Recovery that will be harmed from any such dismissal through no fault of its own. Moreover, the quality of any cargo aboard the vessel is not relevant in determining whether to re-assign to Mission Recovery the exclusive franchise to salvage the *Port Nicholson*, but rather whether Mission Recovery, as the intervening salvor, stands ready, willing, and able to salvage the shipwreck. The record contains substantial support for Mission Recovery's interest in this matter and the *res* which is the subject thereof, which interest may be maintained by this Court issuing a supplemental warrant of arrest of the *Port Nicholson,* and appointing Mission Recovery as the Court's Substitute Custodian.

By its attorneys,

/s/ Seth S. Holbrook
Seth S. Holbrook, ME bar # 2968
HOLBROOK & MURPHY
238-240 Lewis Wharf
Boston, MA 02110
(617) 428-1151
holbrook_murphy@msn.com
sholbrook@holbrookmurphy.com

/s/ Kenneth I. Denos
Kenneth I. Denos, *pro hac vice*
KENNETH I. DENOS, P.C.
11650 South State Street, Suite 240
Draper, UT 84020
(801) 816-2511
kdenos@denoslaw.com

8

**Certificate of Service**

I hereby certify that on March 16, 2015, I electronically filed the above Reply to Responses of Sea Hunters and the DfT to the Court's Order to Show Cause on behalf of Mission Recovery with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/ Seth S. Holbrook
Seth S. Holbrook, ME bar # 2968
HOLBROOK & MURPHY
238-240 Lewis Wharf
Boston, MA 02110
(617) 428-1151
holbrook_murphy@msn.com
sholbrook@holbrookmurphy.com
