# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| SEA HUNTERS, L.P., | ) |
| | ) |
|     Plaintiff | ) |
| v. | )   No. 2:08-cv-272-GZS |
| | ) |
| THE S.S. PORT NICHOLSON, | ) |
| Her Tackle, Apparel, Cargo, | ) |
| Appurtenances, and Property, in Rem, | ) |
| | ) |
|     Defendant | ) |

## RECOMMENDED DECISION ON INTERVENOR'S
## MOTION FOR ATTORNEY FEES

The Secretary of State for Transport of the United Kingdom ("UK DfT"), who entered a restricted appearance in this matter on August 11, 2009, to defend against the claims of Sea Hunters, L.P. ("Sea Hunters") to the submerged wreck and cargo of The S.S. Port Nicholson ("Port Nicholson"), a merchant vessel torpedoed and sunk during World War II, *see* ECF Nos. 26-27, 82, moves for an award of essentially all attorney fees he incurred in this case, totaling $902,179.70. *See* Motion for Attorney's Fees ("Motion") (ECF No. 354) at 1-2. For the reasons that follow, I recommend that the Motion be denied without prejudice.

### I.   Applicable Legal Standards

As this court has noted:

> According to the general "American Rule" applied in admiralty cases, attorneys' fees are not awarded to the prevailing party as a matter of course. . . . Attorneys' fees are available to the prevailing party only under the following circumstances: (1) a federal statute governing the claim provides for them; (2) a contract provides for them; or (3) the party to be sanctioned has acted in bad faith.

*Cianbro Corp. v. George H. Dean, Inc.*, 733 F. Supp.2d 191, 194 (D. Me. 2010) (citations and footnote omitted).

1

The UK DfT invokes the first and third exceptions, relying on a federal maritime lien statute, 46 U.S.C. § 31343, and Sea Hunters' alleged bad faith. *See* Motion at 2.

Section 31343 is part of the Maritime Commercial Instruments and Liens Act of 1988, codified at 46 U.S.C. §§ 31301-43, which "enable[s] a mortgagee to bring a cause of action *in rem* for the foreclosure of a preferred ship's mortgage and endow[s] federal district courts exclusive original jurisdiction to hear that cause of action." *AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296, 1299 n.1 (11th Cir. 2015) (citation and internal quotation marks omitted). It provides, in relevant part:

> The district courts of the United States shall have jurisdiction over a civil action in Admiralty to declare that a vessel is not subject to a lien claimed under subsection (b) of this section, or that the vessel is not subject to the notice of claim of lien, or both, regardless of the amount in controversy or the citizenship of the parties. . . . The court may award costs and attorneys fees to the prevailing party, unless the court finds that the position of the other party was substantially justified or other circumstances make an award of costs and attorneys fees unjust. . . .

46 U.S.C. § 31343(c)(2). Subsection (b) provides for recordation by the Secretary of Transportation of notices compliant with subsection (a). *Id*. § 31343(b)(1). Subsection (a) provides that "a person claiming a lien on a vessel documented, or for which an application for documentation has been filed, under chapter 121 may record with the Secretary a notice of that person's lien claim on the vessel." *Id*. § 31343(a).

An award of attorney fees pursuant to section 31343 does not require a showing of bad faith. *See, e.g., Cianbro*, 733 F. Supp.2d at 193.

With respect to the "bad faith exception" to the American Rule, the First Circuit has observed, "Under admiralty law, a court has inherent power to assess attorneys' fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Templeman v. Chris*

*Craft Corp.*, 770 F.2d 245, 250 (1st Cir. 1985) (citation and internal quotation marks omitted). However, the First Circuit has cautioned:

> [B]ecause of their very potency, inherent powers must be exercised with restraint and discretion and thus should be used sparingly and reserved for egregious circumstances. We, therefore, require that a district court describe the bad faith conduct with sufficient specificity, accompanied by a detailed explanation of the reasons justifying the award.

*Mullane v. Chambers*, 333 F.3d 322, 338 (1st Cir. 2003) (citations and internal quotation marks omitted) (admiralty case).

A movant must meet an exacting burden to demonstrate entitlement to attorney fees based on bad faith. *See, e.g., East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, No. 12-cv-517-LM, 2015 WL 4603463, at *2 (D.N.H. July 30, 2015) ("clear and convincing evidence"); *Great Lakes Reinsurance (UK) PLC v. Kranig*, Civil No. 2011-122, 2013 WL 5811929, at *1 (D.V.I. Oct. 29, 2013) ("high burden") (citation and internal quotation marks omitted).

## II. Discussion

Puzzlingly, while the UK DfT seeks attorney fees pursuant to 46 U.S.C. § 31343, he admits that "Sea Hunters' maritime lien claim for salvage services was not based on the maritime lien statute[.]" Motion at 2. He mentions the statute only once more, asserting that, "from day one going forward, Sea Hunters has had no basis for alleging a maritime lien for treasure salvage services[,]" and, "by analogy 46 U.S.C. § 31343(c)(2) provides a basis for awarding attorney's fees when there is no basis for an alleged maritime lien." *Id*. at 7.

That Sea Hunters did not claim a maritime lien pursuant to section 31343 is dispositive of the UK DfT's bid for attorney fees predicated on that statute. In short, the statute is inapposite. Nor is it appropriate or necessary to apply the statute by analogy. The "bad faith exception" does not preclude an award of attorney fees merely because there is no basis for an alleged maritime lien.

3

However, I conclude that the UK DfT falls short of carrying the heavy burden of demonstrating that an award of attorney fees predicated on the bad faith exception is appropriate in this case.

The UK DfT's theory of bad faith, as set forth in both the Motion and an accompanying 14-page Chronology Demonstrating Bad Faith and Deception ("Chronology"), Exh. 1 (ECF No. 354-1) to Motion, is that "Sea Hunters actively and purposefully used altered and fabricated documents and publications to support its claims of the existence of treasure and insisted on conducting discovery relating to ownership issues of property it knew did not exist and knew would never be salvaged and actively used the fabricated documents long after it knew they were fabricated." Motion at 8; *see also* Chronology at 1 ("The following list of facts and events, with citation to evidence in the record, show[s] that there was absolutely no foundation for filing this salvage case against the SS Port Nicholson and demonstrate[s] an extreme example of bad faith litigation supporting justifying an award of attorney's fees in favor of the UK DfT and against Sea Hunters, L.P.").

It is clear that Sea Hunters filed falsified documents on this court's docket, altered from the originals to show the existence of valuable cargo. *See* Order (ECF No. 319) (noting that Sea Hunters principal Gregory Brooks had filed an affidavit stating that his archival researcher had admitted falsifying two documents). For that reason, as well as Sea Hunters' "inability to salvage any items of substantial value since filing this case in August 2008," Judge Singal dismissed this case with prejudice by order dated April 1, 2015. Order on All Pending Motions & the Order To Show Cause ("4/1/15 Order") (ECF No. 343) at 2.

However, while acknowledging that "the record now calls into question the legitimacy of [Sea Hunters'] arrest [of the Port Nicholson] and the value of any future salvage efforts" and

"demonstrates the significant probability that[,]" as alleged by the UK DfT, "there is no valuable cargo to salvage at this site and . . . all that remains for salvage is 70 year old truck tires, fenders, and miscellaneous other parts and military supplies[,]" *id.* at 3-4 (citation and internal quotation marks omitted), Judge Singal denied the UK DfT's then-pending motions aimed at proving and pursuing a remedy for the alleged fraud, reasoning:

> At this juncture, without any salvor-in-possession, there is no pending claim which UK DfT must defend against. To the extent that it has made multiple filings asserting that it wishes to pursue discovery and sanctions against Sea Hunters because it believes it was the victim of a fraud, any such claim can be pursued via an actio[n] in which UK DfT enters a general appearance and can add other individuals who were allegedly involved in this fraud. Thus, the Court, exercising its discretion and recognizing its inherent powers, finds no good cause for continuing this case solely to allow UK DfT, a claimant here via a restricted appearance, to pursue discovery and further motion practice as outlined in [its pending motions]. The Court notes that given its decision to dismiss Sea Hunters' claims with prejudice and its anticipated allowance of Attorney Tinkle's [Sea Hunters' counsel's] withdrawal, Sea Hunters would have no way of responding or objecting to the discovery UK DfT now seeks to pursue in the context of this admiralty case.

*Id.* at 5-6 (citation and footnote omitted).

Although Judge Singal did not bar the UK DfT from filing a motion for attorney fees, the Motion raises the same concerns as the motions he denied on April 1, 2015.

First, the Motion, at its core, is a variation on the theme of the earlier-denied motions. It, too, fairly can be characterized as one of the UK DfT's "multiple filings asserting that it wishes to pursue discovery and sanctions against Sea Hunters because it believes it was the victim of a fraud[.]" *Id.* at 5.

Second, Sea Hunters did not, and could not, respond. On April 20, 2015, as anticipated, the court granted Attorney Tinkle's motion to withdraw. *See* ECF No. 347. As of that time, absent retaining new counsel, Sea Hunters, a limited partnership, could no longer participate in this litigation. *See, e.g.*, *Tinkers & Chance v. Zowie Intertainment, Inc.,* 15 Fed. Appx. 827, 828 (Fed.

5

Cir. 2001) ("All artificial entities, such as corporations, partnerships, or associations, may only appear in federal court through a licensed attorney."). The Motion was filed on July 14, 2015. *See* ECF No. 354. That circumstance, rather than any acquiescence in the Motion, seemingly accounts for Sea Hunters' silence, given that it had previously consistently disputed any allegation of fraud. *See, e.g.*, Plaintiff's Reply to UK DfT's Response to Order To Show Cause (ECF No. 332) (denying fraud, objecting to the UK DfT's bid for discovery and motion practice on the matter, and arguing that the question should be left in the hands of federal officials who were investigating the alleged fraud, assertedly at the UK DfT's instigation).

Fee-shifting is admiralty cases is an equitable remedy. *See, e.g., MT BALTIC COMMANDER Schiffahrtsgesellschaft MBH & Co. KG v. Massachusetts Port Auth.*, 918 F. Supp.2d 105, 112 (D. Mass.), *appeal dismissed*, No. 13-270 (1st Cir. Apr. 18, 2013) ("As the Supreme Court has held in admiralty cases elsewhere, fee-shifting falls within the equitable jurisdiction of the federal courts[.]"). It is difficult to see how, in these circumstances, a fee award would comport with equitable principles.

Third, while Judge Singal recognized that Sea Hunters' admitted filing of false documents raised serious questions, he concluded, in essence, that this *in rem* action, in which the UK DfT had made a limited appearance, was not the appropriate vehicle through which to resolve the question of whether Sea Hunters deliberately falsified documents from the outset of this action, entitling the UK DfT to reparation.

Fourth, and finally, while the evidence submitted in support of the Motion *suggests* that Sea Hunters may have initiated this suit in bad faith, it does not *prove* it. *See generally* Chronology. The UK DfT himself recognized as much in seeking further discovery. *See, e.g.*, Motion for Additional Discovery (ECF No. 340) at 10. Absent additional evidence, whether from

6

discovery and/or the culmination of any ongoing federal investigation, the UK DfT does not meet his heightened burden of demonstrating the conduct necessary to merit the attorney fee award he seeks.

As Judge Singal observed, *see* April 1, 2015, Order at 5, the UK DfT is not without a remedy. He remains free to bring an action in which he enters a general appearance, Sea Hunters is afforded an opportunity to respond, and he can add others whom he believes were involved in the alleged fraud.

### III. Conclusion

For the foregoing reasons, I recommend that the Motion be **DENIED** without prejudice.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 24th day of November, 2015.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge